IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MUZAFAR BABAKR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:20-CV-02037-SAC-JPO |
| DR. JACOB T. FOWLES, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' JOINT ANSWER TO SECOND AMENDED COMPLAINT**

Defendants Jacob Fowles, Dorothy Daley, Steven Maynard-Mood, Charles Epp, Heather Getha-Taylor, Rosemary O'Leary, Carl Lejuez, Kristine Latta, and the University of Kansas, by and through counsel, answer Plaintiff's Second Amended Complaint as follows. All allegations which are not specifically admitted herein are denied.

**RESPONSES TO ALLEGATIONS**

1. Defendants deny the allegations in paragraphs 1, 2, 3, 4, 5, 27, 28, 32, 39, 40, 42, 43, 44, 45, 47, 48, 56, 57, 60, 61, 64, 65, 66, 68, 69, 71, 72, 73, 74, 77, 78, 79, 80, 81, 83, 84, 85, 87, 88, 89, 90, 91, 92, 93, 94, 95, 97, 98, 99, 100, 102, 104, 105, 106, 107, 109, 112, 114, 115, 117, 118, 121, 122, 123, 124, 125, 126, 127, 131, 135, 137, 139, 143, 146, 147, 148, 150.

2. Defendants admit the allegations in paragraph 31.

3. Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraphs 33, 34, 35, 140, 141, 142, and 145 and therefore deny those allegations.

4. Paragraphs 96, 101, 108, 111, 119, 136 are statements of incorporation that require no response.

5. Responding to paragraph 6, defendants admit that Plaintiff purports to bring claims against the University under Title VI and claims against the individual defendants under 42 U.S.C. § 1983, and that this Court has jurisdiction insofar as the claims involve federal questions. Defendants deny that Plaintiff states a valid claim on any theory and deny that Plaintiff is entitled to any of the relief requested. To the extent a further response is required, defendants deny the remaining allegations of paragraph 6.

6. Responding to paragraph 7, defendants deny that diversity jurisdiction applies to claims against the University, which is not a citizen of any state for purposes of diversity jurisdiction. Defendants lack sufficient knowledge or information to admit or deny the allegations regarding Plaintiff's citizenship status, resident status, or domicile, and therefore deny the remaining allegations of paragraph 7.

7. Responding to paragraph 8, defendants admit that Plaintiff purports to bring a state law claim of civil conspiracy and that this Court may exercise supplemental jurisdiction over such claims. Defendants deny that Plaintiff states a valid claim for civil conspiracy and deny that Plaintiff is entitled to any of the relief requested.

8. Responding to paragraph 9, defendants deny that they are all located in Kansas. Defendants admit that venue is proper in this district and that the relevant facts occurred in Kansas.

9. Responding to paragraph 10, defendants admit that Muzafar Babakr was a student at KU at times relevant to this suit. Defendants deny they committed any misconduct. Defendants lack knowledge or information to admit or deny the remaining allegations, and therefore deny.

10. Responding to paragraph 11, defendants admit that Dr. Epp is sued in his individual capacity. Defendants deny that Dr. Epp is properly sued in his official capacity and deny the remaining allegations of paragraph 11.

11. Responding to paragraph 12, defendants deny that Dr. Fowles is properly sued in his official capacity. Defendants admit the remaining allegations of paragraph 12.

12. Responding to paragraph 13, defendants admit that Dr. Daley is sued in her individual capacity. Defendants deny that Dr. Daley is properly sued in her official capacity and deny the remaining allegations of paragraph 13.

13. Responding to paragraph 14, defendants admit that Dr. Maynard-Moody is sued in his individual capacity and that he was a former member of Plaintiff's specialization examination committee. Defendants deny that Dr. Maynard-Moody is properly sued in his official capacity and deny the remaining allegations of paragraph 14.

14. Responding to paragraph 15, defendants deny that Dr. O'Leary is properly sued in her official capacity. Defendants admit the remaining allegations of paragraph 15.

15. Responding to paragraph 16, defendants admit that Dr. Getha-Taylor is a former member of Plaintiff's specialization examination committee at the School and admit that she is sued in her individual capacity. Defendants deny that Dr. Getha-Taylor is properly sued in her official capacity and deny any remaining allegations of paragraph 16.

16. Responding to paragraph 17, defendants deny that Dr. Lejuez is sued in his official capacity. Defendants admit the remaining allegations of paragraph 17.

17. Responding to paragraph 18, defendants deny that Dr. Latta is properly sued in her official capacity. Defendants admit the remaining allegations of paragraph 18.

18. Responding to paragraph 19, defendants admit that KU is a state institution as defined by K.S.A. § 75-6102(a) and admits that the Kansas Tort Claims Act applies generally to claims against the University or its employees. Defendants deny that KU is subject to liability in this case.

19. Responding to paragraph 20, defendants deny that the proper citation is 42 U.S.C. § 2000(d), but rather 42 U.S.C. § 2000d. Defendants admit the remaining allegations.

20. Responding to paragraph 21, defendants deny that this is an official or complete definition or description of "Specialization," deny any implication that a student is limited to three courses in their specialization area and deny that any policy requires a student's advisor to chair the comprehensive examination in the specialization area. Defendants otherwise admit the remaining allegations of paragraph 21.

21. Responding to paragraph 22, defendants deny that this is an official definition or description of the School of Public Affairs and Administration. Defendants admit that the School is within the College of Liberal Arts and Sciences (the "College") at KU. Defendants admit that KU has several schools and a College, that each school and the College typically have several departments, and that the College has a number of schools. Defendants deny the remaining allegations.

22. Responding to paragraph 23, defendants deny that this is an official definition or description of "Foundations Classes." Defendants admit the remaining allegations.

23. Responding to paragraph 24, defendants deny that this is an official definition or description of "Methods Classes." Defendants deny any implication that a student is limited to two methods classes. Defendants admit the remaining allegations.

24. Responding to paragraph 25, defendants deny that this is an official definition or description of "Specialization Classes." Defendants deny any implication that a student is limited to three specialization classes. Defendants admit the remaining allegations.

25. Responding to paragraph 26, defendants deny that this is an official definition or description of "Cognate Classes." Defendants admit the remaining allegations.

26. Responding to paragraph 29, defendants admit that Plaintiff was an international doctoral student at the School. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations, and therefore deny.

27. Responding to paragraph 30, defendants lack sufficient knowledge or information to admit or deny the remaining allegations, and therefore deny.

28. Responding to paragraph 36, defendants admit that Plaintiff and Dr. Epp met in September 2017 and that Plaintiff stated that he was prepared to sue if the School did not provide him with a single advisor rather than a committee of advisors. Defendants deny the remaining allegations.

29. Responding to paragraph 37, defendants admit that Dr. Epp sent Plaintiff a letter. Defendants admit that the letter indicated in part that the School was recommending to the College that Plaintiff be placed on academic probation due to lack of satisfactory progress toward the degree, and that Plaintiff must successfully complete the PhD Comprehensive Written Examination in the area of Organizational Theory and Behavior by December 1, 2017. Defendants lack sufficient knowledge or information to admit or deny the allegation that a student is typically placed on probation for having a low GPA, and therefore deny. Defendants deny the remaining allegations.

30. Responding to paragraph 38, defendants admit that Article 6.1.3 of the University Senate Rules and Regulations generally prohibits retaliation for utilizing or having assisted others in the utilization of grievance procedures. Defendants admit that the University Whistleblower Policy states in part: "No employee shall take retaliatory action against any individual for reporting, or causing to be reported, suspected wrongdoing, or for assisting in an authorized investigation of alleged wrongdoing." Defendants deny that they retaliated against Plaintiff and deny the remaining allegations of paragraph 38.

31. Responding to paragraph 41, defendants admit that Dr. Epp's letter to Plaintiff stated that it addressed two issues: Plaintiff's request for an advisor and Plaintiff's progress toward the PhD degree. Defendants deny the remaining allegations.

32. Responding to paragraph 46, defendants lack sufficient knowledge or information to admit or deny the allegation that Dr. Maynard-Moody confirmed in an email that preparation and studying for the specialization examination is the job of the student, and therefore deny. Defendants deny the remaining allegations in paragraph 46, as the allegations are not true for all students.

33. Responding to paragraph 49, defendants deny, as the allegations are not true for all students.

34. Responding to paragraph 50, defendants deny any implication that a student has exclusive authority over the choice of an advisor and deny that any policy requires a student's advisor to serve as chair of the specialization examination. Defendants further deny, as the allegations are not true for all students.

35. Responding to paragraph 51, defendants deny that any policy requires the process described. Defendants admit that the allegations describe common practices. Defendants deny any remaining allegations in paragraph 51.

36. Responding to paragraph 52, defendants admit that these allegations describe common practices, but deny that these allegations apply to all students.

37. Responding to paragraph 53, defendants admit that Plaintiff did not choose Dr. Maynard-Moody as his advisor and that Plaintiff did not work with Dr. Maynard-Moody. Defendants admit that Plaintiff did not enroll in any courses with Dr. Maynard-Moody. Defendants admit that Dr. Maynard-Moody's areas of focus and research in Organizational Theory did not overlap with Plaintiff's proposed research. Defendants lack sufficient knowledge or information to admit or deny the allegation of what Dr. Maynard-Moody stated to Plaintiff, and therefore deny. Defendants deny the remaining allegations of paragraph 53.

38. Responding to paragraph 54, defendants admit that Plaintiff was advised to enroll in dissertation hours as he was preparing for the specialization examination as Plaintiff was required to be continuously enrolled and had completed all course requirements. Defendants lack sufficient knowledge or information to admit or deny the allegation of what Dr. Maynard-Moody stated to Plaintiff, and therefore deny. Defendants deny the remaining allegations of paragraph 54.

39. Responding to paragraph 55, defendants admit that Plaintiff was required to make progress toward his degree. Defendants admit that an academic year has two primary semesters. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations, and therefore deny.

40. Responding to paragraph 58, defendants admit that Dr. Maynard-Moody declined to serve as Plaintiff's dissertation advisor. Defendants lack sufficient knowledge or information to admit or deny the allegation of what Dr. Maynard-Moody stated to Plaintiff, and therefore deny. Defendants deny that a dissertation advisor is required to be the same person as the advisor for a specialization examination and deny the remaining allegations of paragraph 58.

41. Responding to paragraph 59, defendants lack sufficient knowledge or information to admit or deny the allegation of what Dr. Maynard-Moody stated to Plaintiff, and therefore deny the allegations of paragraph 59.

42. Responding to paragraph 62, defendants deny that it was the doctoral committee that placed Plaintiff on probation and deny that the probation recommendation letter to Plaintiff was retaliatory. Defendants admit the remaining allegations.

43. Responding to paragraph 63, defendants deny that any progress report letter to Plaintiff's sponsor was contradictory to the probation recommendation letter. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations, and therefore deny.

44. Responding to paragraph 67, defendants admit that Dr. Epp's letter to Plaintiff stated that Plaintiff failed to pass the September 18, 2015 PhD Comprehensive Written Examination, and that Plaintiff did not take the Comprehensive Written Examination when it was administered in January/February of 2016, September of 2016, and January/February of 2017. Defendants deny the remaining allegations.

45. Responding to paragraph 70, defendants deny that the September 15, 2017 probation recommendation letter was retaliatory. Defendants admit that Plaintiff was excused for not sitting for the Comprehensive Written Examination in his specialization area in January /

February 2016 for personal reasons. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations, and therefore deny.

46. Responding to paragraph 75, defendants admit that the September 15, 2017 probation letter stated that Plaintiff was informed in May 2017 that the regular date of the specialization examination was October 6, 2017. Defendants deny the remaining allegations.

47. Responding to paragraph 76, defendants lack sufficient knowledge or information to admit or deny the allegation that Plaintiff did not have the approval of his sponsor for a program extension, and therefore deny. Defendants deny the remaining allegations.

48. Responding to paragraph 82, defendants admit that Dr. Getha-Taylor was a student of Dr. O'Leary in her doctoral program at Syracuse University. Although Dr. Getha-Taylor is supportive of Dr. O'Leary, who is an internationally recognized distinguished scholar in public management, Dr. Getha-Taylor is objective and independent in her work, and therefore defendants deny Plaintiff's characterization that Dr. Getha-Taylor "feels strongly attached to Dr. O'Leary." Defendants admit that Dr. Getha-Taylor declined to serve as Plaintiff's dissertation advisor and that she informed Plaintiff: "I have already agreed to work with several doctoral students this year and am unable to take on the important responsibility of serving as your dissertation advisor." Defendants deny the remaining allegations of paragraph 82.

49. Responding to paragraph 86, defendants admit that Plaintiff was notified of his dismissal from the College on February 9, 2018, and that the dismissal was "effective immediately." Defendants deny the remaining allegations of paragraph 86.

50. Responding to paragraph 103, this paragraph sets forth legal conclusions and questions of law to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 103.

51. Responding to paragraph 110, defendants admit that Plaintiff was placed on academic probation and then dismissed from KU. Defendants lack sufficient knowledge or information to admit or deny whether Plaintiff has experienced severe emotional pain, and therefore deny that allegation. Defendants deny the remaining allegations.

52. Responding to paragraph 113, defendants admit that the School of Public Affairs and Administration recommended to the College of Liberal Arts and Sciences that Plaintiff be placed on academic probation. Defendants admit that the recommendation was based on consultation with Dean Lejuez, Dr. Latta, and Dr. O'Leary, who agreed with the recommendation. Defendants deny that Dr. Getha-Taylor participated in the decision and deny the remaining allegations of paragraph 113.

53. Responding to paragraph 116, this paragraph sets forth legal conclusions and questions of law to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 116.

54. Responding to paragraph 120, this paragraph sets forth legal conclusions and questions of law to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 120.

55. Responding to paragraph 128, defendants admit that doctoral students are advanced students. Defendants deny the remaining allegations of paragraph 128, as they do not apply to all doctoral students.

56. Responding to paragraph 129, defendants admit that Plaintiff has a Master's degree in Public Administration and had been awarded a Fulbright Fellowship. Defendants admit that Dr. Goerdel and Dr. Epp have PhDs in Political Science and not specifically in Public Administration. Defendants admit that Dr. Daley has a PhD in Ecology with an MSc in

Environmental Science, but not specifically in Public Administration. Defendants admit that Reginald Robinson had a J.D. that was not specifically in Public Administration. Defendants deny that Plaintiff's academic status was higher than any of the defendants and deny the remaining allegations of paragraph 129.

57. Responding to paragraph 130, defendants admit that there was a sufficient basis for Plaintiff's academic probation. Defendants deny the remaining allegations of paragraph 130.

58. Responding to paragraph 132, defendants admit that Article 4.5(a) of the Faculty Code of Rights, Responsibilities, and Conduct states that faculty members shall: "Be aware of federal and state law, Board of Regents, and University policies and regulations and comply with them." Defendants deny the implication that they failed to comply with Article 4.5(a) or any law, policy, or regulation relating to Plaintiff, and deny the remaining allegations of paragraph 132.

59. Responding to paragraph 133, defendants deny that they deprived Plaintiff of any property or liberty interest. Defendants object to any allegations regarding communications between attorneys for the University and defendants regarding liability, as the response would invade the attorney-client privilege. Defendants deny any remaining allegations.

60. Responding to paragraph 134, defendants admit that Plaintiff is not the first person to sue the University or University employees. Defendants deny any liability as to Plaintiff, and generally deny the remaining allegations of paragraph 134.

61. Responding to paragraph 138, this paragraph sets forth legal conclusions and questions of law to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 138.

62. Responding to paragraph 144, defendants deny that Plaintiff was close to obtaining his PhD degree. Defendants admit that Plaintiff completed his bachelor's and master's

11

degrees and had been awarded a Fulbright Fellowship. Defendants lack sufficient knowledge or information to admit or deny whether Plaintiff has ever failed a quiz, and therefore deny that allegation. Defendants deny any remaining allegations in paragraph 144

63.     Responding to paragraph 149, defendants admit that the September 15, 2017 academic probation recommendation letter and the September 18, 2017 academic probation letter stated that Plaintiff was placed on probation because he had not made satisfactory progress towards his degree by failing to successfully complete the written comprehensive exam within the time limits established by the School. Defendants lack sufficient knowledge or information to admit or deny the allegations about Plaintiff's possession of a progress letter or the time frame for that letter or the purported conversation, and therefore deny those allegations. Defendants deny the remaining allegations.

## GENERAL DENIAL

Defendants deny and any and all other allegations and assertions contained in Plaintiff's Second Amended Petition unless explicitly admitted herein.  Defendants further deny that Plaintiff states a valid claim under any of his theories and denies that he is entitled to any relief, whether monetary or equitable.

## RESPONSE TO PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of forms of relief specified in his "Prayer for Relief."

## DEMAND FOR JURY TRIAL

Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

1. Plaintiff's Second Amended Complaint fails to state a claim against defendants for which relief can be granted.

2. Defendants had legitimate, non-retaliatory reasons for their actions.

3. Plaintiff's damages, if any, are not of the nature or to the extent alleged.

4. Plaintiff has failed to mitigate his damages, if any.

5. Defendants reserve the right to assert any other defenses that may be revealed through the course of discovery.

Respectfully submitted,

/s/ Eric J. Aufdengarten
Eric J. Aufdengarten, KS #21289
Associate General Counsel and
Special Assistant Attorney General
The University of Kansas
245 Strong Hall, 1450 Jayhawk Blvd.
Lawrence, Kansas 66045
Tel: (785) 864-3276
Fax: (785) 864-4617
eja@ku.edu
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a true and correct copy of this document was filed through the Court's CM/ECF filing system on the 20th day of August, 2021, which generated a Notice of Electronic Filing to the following:

Muzafar A. Babakr
1600 Haskell Avenue, Apt. #170
Lawrence, Kansas 66044
muzaferi@gmail.com
*Plaintiff pro se*

/s/ Eric J. Aufdengarten
Eric J. Aufdengarten
*Counsel for Defendants*